OPINION.
{¶ 1} The State of Ohio appeals from the trial court's judgment sustaining Defendant's motion to suppress heroin that police seized from Defendant's vehicle from use by the State in prosecuting multiple drug charges on which Defendant had been indicted. The trial court granted the motion on a finding that the plain view exception did not justify the warrantless seizure of the heroin because the officer was not lawfully positioned on the driveway next to the vehicle when he shined his flashlight inside the vehicle and observed the heroin.
 {¶ 2} Upon review we conclude that the officer was lawfully on the premises in the performance of his official duties investigating a complaint, that the officer's conduct in standing outside the vehicle and shining his flashlight into the vehicle does not constitute a search for Fourth Amendment purposes, and that in any event the requirements necessary to satisfy the plain view doctrine were met in this case. Therefore, we will reverse the suppression order and remand this case for further proceedings.
 {¶ 3} When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford (1994), 93 Ohio App.3d 586. Upon appellate review of a decision on a motion to suppress, the court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. Accepting those facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
 {¶ 4} The facts found by the trial court at the conclusion of the hearing on Defendant's motion to suppress are as follows:
 {¶ 5} "[T]hat the Dayton Police Department received a letter on the 21st of June, 2002 regarding an address known as 4028 Prescott in the City of Dayton, Ohio. The substance of the letter was a complaint that there was Disorderly Conduct occurring from time to time at the address by the way of loud music, loud voices, so on, and requested of the — I believe the Fifth District in this case, some relief from that intermittent Disorderly Conduct.
 {¶ 6} "That letter was received at the Fifth District on the 21st of June and nothing was done with it for five days. On the 27th of June, at what I guess is called roll call, a Sergeant, pursuant to the — to his commander, the Lieutenant, assigns to Officer Ponichtera of the Dayton Police Department the task of stopping by those premises to advise the occupants of the complaint and presumably to request future compliance with the law in that regard.
 {¶ 7} "Officer Ponichtera indicates that he worked on the night before the 27th, obviously the 26th, on a shift from 4:00 p.m. to 2:00 a.m. — excuse me. For some reason he didn't get around to it until around the hour of 1:20 a.m. the next day on the 27th.
 {¶ 8} "Officer Ponichtera pulls up to the property, sees what he thinks is a car that's backed up in the driveway up close to the house and apparently has two occupants in the car and a third person leaning on the passenger side window opening, apparently talking to the occupants. The officer turns on the bright spotlights of his police cruiser on the car, the occupants, and so on, and he approaches the car.
 {¶ 9} "Now, the person leaning on the window walks away. The occupants get out and walk quickly to the house. The officer makes a statement about, you know: `How're you doing? Police.' And as they are walking away he says: `You don't have to leave on my account.'
 {¶ 10} "The two men in the car, one of which is the Defendant, go into the ho — go into the home. The officer, rather than going and proceeding up and knocking on the door, walks over to the car and shines the light into it and sees the portion of a handgun stuffed between the seat and the seat back on the passenger's side.
 {¶ 11} "At that point in time he calls for back-up. And then while back-up is on its way, he then looks further and on the driver's side sees a baggie containing brown capsules, kind of in the door indentation where one would pull the door closed. And he suspects that it's heroin. And from his experience it's probably justifiable that he thinks that, and he retrieves that baggie.
 {¶ 12} "Other officers arrive and eventually the Defendant and his brother are brought from the house and — and arrested. That's the facts." (T. 133-135).
 {¶ 13} In addition to the foregoing facts, the record indicates that the window through which Officer Ponichtera first looked and saw the gun was a passenger window, that the window was open, and that he illuminated the interior with his flashlight.
 {¶ 14} The trial court held that the encounter between the officer and Defendant was not a Terry stop but was instead a purely consensual encounter that did not authorize the officer to look through the windows of Defendant's automobile while shining a light inside to illuminate the interior. Because the officer lacked legal authority to be in a position to see the evidence inside, which was in plain view, the plain view exception to the warrant requirement was not satisfied. The court subsequently journalized its judgment granting Defendant's motion to suppress. The State filed a timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 15} "The trial court erred when it determined that Officer Ponichtera's seizure of the heroin was not within Fourth Amendment purviews, and sustained McClain's motion to suppress, as the heroin was seized pursuant to the plain view exception to the Fourth Amendment warrant requirement."
 {¶ 16} Defendant-Appellee has failed to file a brief. Therefore, in determining this appeal we will accept Appellant's statement of the facts and issues as correct and reverse the judgment if Appellant's brief reasonably appears to sustain such action. App.R. 18(C).
 {¶ 17} Searches and seizures conducted without a warrant are per se unreasonable under the Fourth Amendment subject to only a few specifically established and well delineated exceptions. Katz v. UnitedStates (1967), 389 U.S. 347. The State argues that because Officer Ponichtera observed the heroin in "plain view" from outside Defendant's vehicle, his seizure of that contraband falls within that well recognized exception to the warrant requirement. Coolidge v. New Hampshire (1971),403 U.S. 443; State v. Waddy (1992), 63 Ohio St.3d 424.
 {¶ 18} The plain view doctrine requires that (1) the initial intrusion which afforded law enforcement officers their observation of the item must be lawful and (2), the incriminating nature of the item must be immediately apparent. Waddy, supra; State v. Reaves (Nov. 3, 2000), Montgomery App. No. 18302. The trial court concluded that because there was no reasonable suspicion of any criminal activity relating to the vehicle, Officer Ponichtera could not lawfully walk over to the vehicle and look inside through the window. In other words, Officer Ponichtera was not lawfully positioned on the driveway next to the vehicle when he used his flashlight to look inside, through the open passenger window, and observed the heroin. We disagree.
 {¶ 19} Officer Ponichtera was at the residence to investigate a complaint police received about loud and disorderly persons at that location and to advise the residents about that complaint. Therefore, Officer Ponichtera was privileged to be on this private property while in the performance of his official duties. State v. Alexander (Oct. 6, 2000), Champaign App. No. 2000-CA-6; State v. Casey (May 26, 2000), Miami App. No. 99-CA-43; State v. Chapman (1994), 97 Ohio App.3d 687. The vehicle in which the evidence was found was on the property, situated on the driveway.
 {¶ 20} Officer Ponichtera testified that he intended to talk to the men in the vehicle about the complaint he received concerning this property, and was walking up to the vehicle for that purpose when the two men inside jumped out and quickly went into the house. That appears to have attracted his attention, and he decided to focus his inquiry on the automobile from which the men had emerged. Even so, his conduct in then looking into the open passenger window while standing outside the vehicle does not constitute a search for Fourth Amendment purposes, notwithstanding the fact that the lights from his cruiser illuminated the vehicle's interior, making identification of its contents easier. Statev. Lang (1996), 117 Ohio App.3d 29. Therefore, the State is not required to demonstrate an exception to the warrant requirement. Reaves, supra.
 {¶ 21} In any event, when Officer Ponichtera looked inside this vehicle he observed the butt end of a gun sticking out from the area of the passenger seat where the seat back and seat cushion meet. He also observed, in an indentation or pocket in the driver's door, a baggie that contained brown capsules that he immediately recognized from his police experience as heroin. Accordingly, the incriminating nature of this contraband was immediately apparent and Officer Ponichtera was entitled to seize it because the requirements of the plain view exception to the warrant requirement were satisfied at that point. Reaves, supra. The trial court erred in granting Defendant's motion to suppress the evidence.
 {¶ 22} The State's assignment of error is sustained. The judgment of the trial court will be reversed and the case remanded for further proceedings consistent with this opinion.
FAIN, P.J. and YOUNG, J., concur.