[Cite as *State v. Dukes*, 2013-Ohio-1691.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   25488 |
| v. | : | T.C. NO.    12CR1071 |
| EDWARD L. DUKES | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

## O P I N I O N

Rendered on the ____26th____ day of _____April_____, 2013.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ANTONY A. ABBOUD, Atty. Reg. No. 0078151, 130 W. Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

        **{¶ 1}**  This matter is before the Court on the Notice of Appeal of Edward

Dukes,
filed November 20, 2012.  Dukes appeals from his conviction and sentence, following a plea of no contest, to one count of possession of cocaine (less than five grams), in violation of R.C. 2925.11(A), a felony of the fifth degree.  Dukes was sentenced to community control sanctions for a period not to exceed five years.

{¶ 2}    Dukes was indicted on June 5, 2012, and on June 19, 2012, he pled not guilty.  On July 5, 2012, Dukes filed a motion to suppress, which the trial court overruled after a hearing.  At the hearing, Officer Jeff Hiber testified that on April 6, 2012, between 9:00 and 10:00 p.m., while on routine patrol, he initiated a traffic stop on a vehicle he observed leaving Gina's Liquor Store on Salem Avenue and heading northbound.  Hiber testified, "I stopped the vehicle because upon running the license plate of the vehicle it came back as being on the City's tow list."   Hiber stated that the vehicle was on the tow-in-list as the result of three unpaid parking citations.

{¶ 3}    Hiber stated that the City of Dayton is owed in excess of $750,000.00 in unpaid parking citations, and that there was "a change or a revision of the original tow policy, stating that if you * * * encountered a vehicle that had two or more parking citations and the vehicle was either parked or moving on a city street that you could stop and tow that vehicle."   Hiber identified, as Exhibit 1, the "Dayton Police Department General Order 3.02-6 Towing Motor Vehicles," which provides in part, "I.   WHEN TO TOW A VEHICLE (FOR TOWS INVOLVING PARKING VIOLATIONS REFER TO PARKING ENFORCEMENT POLICY, 3_02-3."   Hiber also identified, as Exhibit 3,  the "Dayton Police Department General Order Parking Enforcement 3.02-3," referred to in Exhibit 1, which provides in part:

I.   TYPES OF ENFORCEMENT ACTION

* * *

B.   Parking Citation - Enforcement action used when vehicle is illegally parked but not in a tow zone or on the Tow-in-List. * * *

C.   Towing - Used when an unlawfully parked vehicle presents a hazardous condition, is on the Tow-in-List, or is in a Tow Away Zone.

II.   PARKED MOTOR VEHICLES MAY BE TOWED UNDER THE FOLLOWING CIRCUMSTANCES:

* * *

g.   Unlawfully parked motor vehicles on the Tow-in-List on public property.

{¶ 4}    Hiber also identified, as Exhibit 2,  "Executive Order No. 7-2012," dated April 4, 2012, from Richard S. Biehl, Director and Chief of Police, and directed to "All Personnel," which provides as follows:

Previous Executive Order 9-2011 allowed officers to tow vehicles with two (2) or more unpaid parking citations from the public right of way. Effective April 4, 2012 officers may now tow vehicles with two (2) or more automated traffic control photographic system (ATCPS) - (red light/speed) citations.

Vehicles with two (2) or more unpaid parking and/or ATCPS citations will appear on the tow-in list.  Vehicles that are on the tow-in list for these violations may be towed when the officer comes into contact with the vehicle

operating or parked on a public street. Officers may provide the owner with the opportunity to have someone pay the unpaid citations at the Clerk of Court Office and return to the scene in a reasonable amount of time prior to towing the vehicle.

{¶ 5} Hiber testified that when he approached the vehicle at issue, he observed that it had two occupants, and that Dukes was in the front passenger seat. Hiber stated, "I made contact with the driver of the vehicle and explained to him the reason why I had stopped him and asked to see his license and proof of insurance and advised him that I had found that his vehicle was on the tow list because of the three unpaid parking citations." Hiber stated that he "noticed that there was an open container of alcohol in the console in his vehicle. And in addition there was a cup of alcohol next to the can of what appeared to be beer in the console." Hiber stated that the cup contained vodka. Hiber asked the driver to hand him the open containers, and that the driver complied. Hiber stated that he then removed the driver from the vehicle, patted him down and placed him in his cruiser for officer safety.

{¶ 6} Hiber testified that he then returned to the vehicle and removed Dukes, patted him down, and placed him in his cruiser for officer safety as well. Hiber stated that he returned to the car and observed "bottles of alcohol that were on the floorboard, on the right side, passenger side, where the passenger had been seated." In the course of removing those bottles, Hiber stated that he "discovered a small cellophane baggy with a hard rock - - rocky substance that - - which is consistent with crack cocaine." Specifically, Hiber stated that the substance was located "right where the feet would be if you were sitting on the right

front passenger seat, closest right next to the door." Hiber stated that he tested the substance with cobalt reagent and confirmed that it was crack cocaine. Hiber stated that he returned to his cruiser, informed Dukes that he was under arrest, and read him his rights from a card provided by the prosecutor's office. Hiber stated that Dukes indicated his understanding of each of his rights, and that he "admitted that the crack cocaine was his."

{¶ 7} On cross-examination, Hiber stated that the Executive Order originated from the police department and not the City of Dayton. Hiber stated that he initiated the stop by activating his overhead lights, and he stated that the driver and Dukes were not free to leave in the course of the stop but were "detained." Hiber stated that the vehicle was towed from the scene.

{¶ 8} On redirect examination, Hiber stated that the crack cocaine was not found in the course of an inventory search but that he "saw the drugs immediately." Hiber stated that the Executive Order was issued to "all working police department personnel." Hiber stated that he did not observe a traffic violation prior to stopping the vehicle, and that he stopped the vehicle because it was on the tow-in list.

{¶ 9} In response to questions from the court, Hiber stated that the Executive Order was "read out loud in roll call by our sergeant - - supervisor, advising to all the patrol officers of the revision, about the new tow - - towing vehicle policy." He stated that State's Exhibit 3 was revised in December of 2008, and in force and effect at the time he stopped the vehicle at issue.

{¶ 10} In its decision overruling Dukes' motion to suppress, the court determined in part as follows:

Officers may stop and detain a motorist when observing any traffic offense or violation of the law and no independent "reasonable articulable suspicion" of other criminal activity is required under *Terry*. Observations of things in *plain sight,* made from a place where a police officer has a right to be, do not amount to a search in the constitutional sense.

The Second District, following the Supreme Court, permits officers to order occupants out of a vehicle during a lawful traffic stop, given the concern for officer safety and the minimal intrusion to the occupants.

The U.S. Supreme Court and the Ohio Supreme Court hold that the prosecution may not use any statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of a defendant, unless it demonstrates the use of procedural safeguards to secure a defendant's privilege against self-incrimination. The burden is upon the prosecution to prove that a knowing, intelligent and voluntary waiver of a defendant's *Miranda* rights was obtained or occurred.

Here, Officer [Hiber] had authority to stop the car (and tow) pursuant to Dayton Police Department General Orders 3.02-6 Towing Motor Vehicles, 3.02-03 Parking Enforcement, and Executive Order 7-2012. Ordering the occupants out of the car was permitted, and certainly Officer [Hiber], upon observing open alcohol containers and the baggie of crack cocaine in plain view, in no way violated Defendant's constitutional protections. Further, before questioning Defendant, Officer [Hiber] secured Defendant's knowing, intelligent and voluntary waiver of his *Miranda* rights.

{¶ 11}  Dukes asserts one assigned error as follows:

"THE TRIAL COURT ERRED BY OVERRULING THE MOTION TO SUPPRESS."

{¶ 12}  As this Court has previously noted:

With respect to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."  *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac* (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citing *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id. *State v. Cooper*, 2d Dist. Montgomery No. 23719, 2010-Ohio-1120, ¶ 10.

{¶ 13}  As this Court has indicated:

The Fourth Amendment to the United Stated Constitution guarantees the right of people to be free from unreasonable searches and seizures. The purpose of the Fourth Amendment is "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."  *United States v. Mendenhall* (1980), 446 U.S. 544, 553-54,

quoting *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 554. It is important to note that only unreasonable searches and seizures are unconstitutional.

It is undisputed that the warrantless stop of an automobile is a "seizure" within the meaning of the Fourth Amendment. See *Delaware v. Prouse* (1979), 440 U.S. 648. In the context of a routine traffic stop, the officer must have a reasonable, articulable suspicion of criminal activity to perform the stop. See *Terry v. Ohio* (1968), 392 U.S. 1. It has generally been held that the observation of a traffic offense provides a sufficient basis for such a stop. See, e.g., *State v. Richardson* (1994), 94 Ohio App.3d 501. *State v. Prendergast,* 2d Dist. Montgomery No. 14746-7, 1995 WL 461346 (Aug. 2, 1995).

{¶ 14} As this Court has previously noted:

The plain view exception authorizes the seizure, without a search warrant, of an illegal object or contraband that is immediately recognizable as such when it is in plain view of a law enforcement official. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465-466, 91 S.Ct. 2022, 29 L.Ed.2d 564; *State v. Davie* (1993), 86 Ohio App.3d 460, 464, 621 N.E.2d 548. "Under [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was 'immediately apparent' that the item was incriminating." *State v. Waddy* (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819. *State v. Gist*, 2d Dist.

Montgomery No. 22823, 2009-Ohio-4791, ¶ 34.

**{¶ 15}** As noted by this Court, in the case of an unlawful traffic stop, evidence and statements obtained as a result must be suppressed. *Cooper*, at ¶ 22, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**{¶ 16}** Title 45 of the Ohio Revised Code sets forth traffic laws governing the operation of motor vehicles, including motor vehicle crimes. Title VII of the Code of Ordinances, City of Dayton, Ohio, sets forth the municipal traffic code for the City of Dayton. We note that fines imposed for parking violations are civil in nature, and it is not a crime pursuant to Title 45 of the Revised Code or Title VII of the City of Dayton's Code of Ordinances to drive a vehicle while owing money on parking citations. Hiber's testimony is clear that he initiated the traffic stop herein because the vehicle was on the police department's "tow-in-list." He did not observe a traffic violation or testify that he possessed a reasonable articulable suspicion of criminal activity when he stopped the car.

**{¶ 17}** We further note that the State's reliance upon *City of Xenia v. McDaniel*, 2d Dist. Greene No. 2000-CA-7, 2000 WL 873212 (June 30, 2000), is misplaced. Therein, McDaniel was convicted of driving under the influence of alcohol following a traffic stop, and this Court upheld the stop, which was initiated not for the purpose of investigation but for the purpose of advising McDaniel that he was no longer welcome at the home of a woman with whom he had had a relationship. This Court noted, while "cases involving traffic stops overwhelmingly involve stops made for the purpose of investigating possible criminal activity, that is not the only proper purpose for which a stop may be made." *Id*., * 3. This Court noted that when a stop is initiated for other than an investigatory purpose, the

public interest in making the stop must be weighed against the individual's interest in privacy. *Id*.

{¶ 18} This Court then determined as follows:

In the case before us, the purpose in making the stop was more directly intended to benefit a third person - - the unnamed woman with whom McDaniel had a relationship - rather than to benefit McDaniel himself. However, in view of the past history of a strained relationship, a police officer's having undertaken to be the bearer of a message of personal rejection likely to arouse anger on McDaniel's part may well have served to benefit both parties to the relationship, by diminishing the likelihood of an angry, and potentially violent, confrontation between the two. *Id*., *4.

This Court concluded that "it was reasonable for [the officer] to inflict upon McDaniel the minor, but not negligible, inconvenience of a traffic stop, for the purpose of relaying the message that he was no longer welcome at the residence of the woman with whom he had a relationship." *Id*.

{¶ 19} We disagree with the State's assertion that the "public's interest in obtaining the hundreds of thousands of dollars owed to the City for unpaid parking citations outweighed Dukes' privacy interest as a passenger in a vehicle on the Tow List." Hiber was not exercising a care-taking function as exhibited in *McDaniel* and, as noted above, Hiber did not observe a traffic violation, he lacked a reasonable articulable suspicion of any criminal activity to justify the stop, and driving a motor vehicle while owing civil parking fines is not a crime. (We note, contrary to the trial court's assertion, that Exhibit 3 only

allows for the towing of unlawfully parked vehicles on the tow-in-list). In other words, the protections guaranteed by the Fourth Amendment cannot be altered by means of an Executive Order issued to police department personnel. Since Dukes' Fourth Amendment rights were violated by Hiber's unlawful stop, the plain view doctrine does not apply to the crack cocaine which, along with Dukes' admission that the crack cocaine was his, were subject to suppression. Accordingly, the trial court erred in overruling Dukes' motion to suppress, his assignment of error is sustained, and the judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

. . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

R. Lynn Nothstine
Antony A. Abboud
Hon. Steven K. Dankof