[Cite as *State v. Thompson*, 2013-Ohio-4825.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25658 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2012-CR-1602 |
| v. | : | |
| | : | |
| PETER E. THOMPSON, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 1st day of November, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. #0089541, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellant

J. DAVID TURNER, Atty. Reg. #0017456, Post Office Box 291771, Kettering, Ohio 45429
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    The state appeals the order of the trial court suppressing the heroin and cocaine found in the defendant's car during a warrantless search. Because we conclude that the search was lawful under the automobile exception, we reverse.

**FACTS**

**{¶ 2}** In July 2012, Peter Thompson was charged with possession of heroin and cocaine after these drugs were found in his car. Thompson moved to suppress the drugs. At the hearing, only the police officer who had searched the car and found the drugs testified. Based on his testimony, the trial court found the following facts.

**{¶ 3}** Sergeant John Riegel has been a Dayton Police Officer for ten years. He spent two of the later years as a narcotics detective. The last year and a half he has been assigned to the Fifth District. During the late morning of May 24, 2012, Riegel was driving his marked cruiser when he saw a car turn, what he thought was, a little too fast for the conditions. The car was being driven by Thompson. The car passed Riegel, and he watched it turn into an alley without signaling. Intending to stop the car for failing to signal a turn, Riegel turned his cruiser around and followed it into a parking lot behind an apartment building. Riegel knew from his experience as a narcotics detective that "there have been a lot of complaints about drug activity at [these] apartments." (Tr. 9).

**{¶ 4}** Sergeant Riegel parked his cruiser directly behind Thompson's car and ran after Thompson, who was already walking rapidly towards the front of the building. When Riegel caught up, he asked Thompson if Thompson lived in the building. Thompson replied that he did not. Riegel then asked Thompson if he had a driver's license. Thompson replied that he had a temporary permit. When Riegel "ran Thompson's information," he discovered that Thompson's temporary driver's permit had been suspended. The trial court's written decision describes what happened next:

Prior to placing Thompson in the cruiser, Riegel conducted a patdown. No

weapons were found. However, Riegel testified that as he began the patdown, Thompson "was shaking so violently that it immediately made me concerned for my safety. In my 10 years of experience on the police department, I've rarely had someone shaking like that . . . . When someone is shaking like that, it makes me concern [sic] for my safety that they may have a weapon. For some reason they're not just like the average person is concerned about the police stop but they may be potentially preparing to assault me." [sic] Id. Therefore Sgt. Riegel handcuffed Thompson before placing him in the cruiser.

Sgt. Riegel's arrest of Thompson and placing him in the cruiser then led Riegel to - and enabled Riegel to - return to the Bonneville to confirm no one else was in the car. Standing outside of the Bonneville - and without opening any car door - Riegel "noticed a single marijuana cigarette in the center console of the car and the open area where you would put cups." Id. Based on Riegel's law enforcement training and experience, it was readily apparent to him that the substance was marijuana.

(February 22, 2013 Decision and Entry Sustaining "Motion to Suppress," 3).

{¶ 5} Riegel testified that if the driver of a vehicle does not have a valid license and no one else is present to drive the vehicle, the Dayton Police Department's policy is to tow it. And before towing, said Riegel, the department's policy is to inventory the vehicle's contents. Riegel called for backup. When it arrived, he entered Thompson's car, seized the marijuana cigarette, and conducted an inventory search. Inside the center console he found heroin and cocaine.

{¶ 6}    Based on these facts, the trial court sustained Thompson's motion to suppress.[1] The court concluded that the drugs must be excluded as "fruit of the poisonous tree" because Thompson's arrest was unlawful. The court said that the offense for which Riegel initially arrested Thompson–operating a motor vehicle without a valid license, a violation of R.C. 4510.12–could have been only a minor misdemeanor, R.C. 4510.12(C)(2),[2] for which a person may not be arrested, R.C. 2935.26.[3] And it was the arrest, said the court, that led to the discovery of the drugs in Thompson's car, since the inventory search was premised on, and Riegel's ability to look in the car was a result of, the arrest.[4]

{¶ 7}    The state appealed.

---

[1] Thompson's motion also asked the trial court to suppress statements that he made to Riegel. The state does not challenge the exclusion of these statements.

[2] If the offender's driver's license or permit is *expired* at the time of the offense, the offense is a minor misdemeanor. R.C. 4510.12(C)(2). If in addition, within the past three years the offender has at least twice been convicted of or pleaded guilty to violating R.C. 4510.12, or a similar municipal ordinance, the offense is a first-degree misdemeanor. R.C. 4510.12(C)(2). The trial court said that Sergeant Riegel did not testify about knowing of any such prior violations.

[3] R.C. 2935.26(A) prohibits a police officer from arresting a person for committing a minor misdemeanor, except in certain situations listed in the statute.

Riegel testified that Thompson's temporary permit had been *suspended*. For driving with a suspended temporary permit, Thompson could have been charged with driving under suspension, R.C. 4510.11, a first-degree misdemeanor. Or if his permit had been suspended under R.C. Chapter 4509, Thompson could have been charged with driving under a financial-responsibility suspension, R.C. 4510.16, an initial violation of which is an unclassified misdemeanor. Or if his permit had been suspended for operating his vehicle under the influence of drugs or alcohol, Thompson could have been charged with driving under an OVI suspension, R.C. 4510.14, a first-degree misdemeanor. All of these are arrestable offenses. Although the record does not reveal the reason that Thompson's permit was suspended, we do not need to determine whether Riegel could lawfully arrest Thompson, as we will explain.

[4] The trial court also concluded that the inventory search was unlawful because the state had failed to establish that the search was done in accordance with a standardized impoundment and inventory policy. The state does not challenge this conclusion.

## ANALYSIS

{¶ 8}    The state challenges the trial court's suppression of the heroin and cocaine found in Thompson's car. The standard used to review a suppression order has been succinctly stated by the Ohio Supreme Court:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 9}    The state assigns two errors to the suppression order. The first assignment of error alleges that the trial court erred in concluding that Thompson's initial arrest was unlawful. The second assignment of error alleges that the trial court erred in concluding that the search of Thompson's car was unlawful. We begin with the second assignment of error.

{¶ 10}   The Fourth Amendment to the United Stated Constitution prohibits unreasonable searches and seizures. Stopping an automobile constitutes a "seizure." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." *Dayton v. Erickson*, 76 Ohio

St.3d 3, 11-12, 665 N.E.2d 1091 (1996) (police officer stopped the vehicle after seeing the vehicle fail to signal a turn); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 22-23 (reasonable suspicion or probable cause is sufficient). Thus if a police officer sees a vehicle commit a traffic offense, the officer may lawfully stop the vehicle. *State v. Dukes*, 2d Dist. Montgomery No. 25488, 2013-Ohio-1691, ¶ 13.

{¶ 11}   Under (what some have called) the "open view" doctrine, "where an officer can observe contraband without making a prior physical intrusion into a constitutionally protected area, such as when an officer 'sees an object * * * within a vehicle,' there 'has been no search at all.'" *State v. Bazrawi*, 10th Dist. Franklin No. 12AP-1043, 2013-Ohio-3015, ¶ 15, quoting *State v. Harris*, 98 Ohio App.3d 543, 547, 649 N.E.2d 7 (8th Dist.1994), quoting 1 LaFave, *Search and Seizure*, Section 2.2(a) (2d Ed.1987). This is because the driver possesses "'no legitimate expectation of privacy shielding that portion of the interior of an automobile[,] which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.'" *Id.* at ¶ 16, quoting *Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

{¶ 12}   Sergeant Riegel's looking in Thompson's car and seeing the marijuana cigarette does not implicate the Fourth Amendment. *Compare State v. McClain*, 2d Dist. Montgomery No. 19710, 2003-Ohio-5329, ¶ 20 (saying that a police officer's "looking into the open passenger windows while standing outside the vehicle does not constitute a search for Fourth Amendment purposes"). But his warrantless search of the car does.

{¶ 13}   "Warrantless searches are per se unreasonable under the Fourth Amendment subject to only a few well established exceptions." *State v. Pounds*, 2d Dist. Montgomery No. 21257, 2006-Ohio-3040, ¶ 19, citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19

L.Ed.2d 576 (1967). Two such exceptions are the plain-view exception and the automobile exception. Under the plain-view exception, "police may seize an article when its incriminating nature is immediately apparent to an officer who comes in contact with the item through lawful activity." *Id.*, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Under the automobile exception, police may warrantlessly search a vehicle that they have probable cause to believe contains contraband. *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000). Seeing a contraband item in plain view in a vehicle gives police probable cause to believe that the vehicle contains other contraband items as well. *Pounds* at ¶ 21 (seeing marijuana inside the vehicle gave the police officer probable cause to believe the vehicle contained other contraband so he could search it under the automobile exception). The scope of the search extends to anywhere in the vehicle that contraband might be hidden. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

{¶ 14} Here, when Sergeant Riegel looked inside Thompson's car, he saw in plain view what he immediately believed was a marijuana cigarette. This gave Riegel probable cause to search the entire passenger compartment, including the center console. Therefore the search was lawful.

{¶ 15} We further conclude that the search was based on a source independent of Thompson's arrest, so the exclusionary rule does not apply. We have explained the exclusionary rule's application this way:

> "The exclusionary rule is a judicially created remedy applied to exclude evidence from the government's case in chief when it has been obtained by police through an illegal search or seizure in violation of the Fourth Amendment. *Mapp*

*v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The exclusionary rule applies not only to primary evidence directly obtained by police during an illegal search or seizure but also to 'derivative evidence,' that is, evidence discovered from knowledge gained by the police as a result of the illegal search or seizure. *Silverthorne Lumber Co. v. U.S.* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319. Derivative evidence is known as 'fruit of the poisonous tree.' *Nardone v. U.S.* (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307." *State v. Kelly* (Sept. 24, 1993), Clark App. No. 3007.

"In order for derivative evidence to be suppressed, the evidence must have been obtained by exploitation of the illegal search or seizure, and therefore be tainted by it. In applying the exclusionary rule, courts do not utilize a 'but for' test, which would include any evidence that would not have come to light but for the search [or seizure] performed by the police. Instead, the evidence must be the product of the illegality concerned." *State v. Freeman*, Montgomery App. No. 18798, 2002-Ohio-918 (citations omitted). "[T]he fruit-of-the poisonous-tree doctrine is generally subject to three qualifications: (1) the independent source doctrine; (2) the inevitable discovery rule; and (3) the attenuated connection principle." *United States v. Stamper* (C.A.6 Mar. 3, 2004), Case No. 02-6389.

*State v. Cranford*, 2d Dist. Montgomery No. 20633, 2005-Ohio-1904, ¶ 21-22. We believe that Rigel's checking Thompson's car, because of Thompson's extreme nervousness, to see if there were other occupants is unrelated to, and not resulting from, his decision to physically arrest Thompson. The record is not clear as to precisely when Riegel decided to arrest Thompson rather

than issue him a citation, but it was sometime after Riegel placed Thompson in the cruiser and confirmed that Thompson was driving under suspension. Had the search been supported only by a desire to inventory the car's contents because Thompson was going to jail, we might be inclined to find a more direct connection between the physical arrest and the search. But because we conclude that the search had an independent source, we do not address that issue.

{¶ 16} The second assignment of error is sustained.

{¶ 17} We need not decide the first assignment of error, concerning the lawfulness of Thompson's initial arrest. Sergeant Riegel's looking in the car and seeing the marijuana cigarette are sufficient by themselves to render the search lawful, and the authority for that search was not the result of any unlawful conduct. The first assignment of error is moot.

{¶ 18} The trial court's suppression order is reversed with respect to the items seized from Thompson's car; the rest of the order is affirmed. This case is remanded for further proceedings.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck
April F. Campbell
J. David Turner
Hon. Dennis J. Langer