[Cite as *State v. King*, 2017-Ohio-8910.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27432 |
| | : | |
| v. | : | Trial Court Case No. 16-CRB-6029 |
| | : | |
| TODD A. KING | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of December, 2017.

. . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

JOYCE M. DEITERING, Atty. Reg. No. 005776, 8801 North Main Street, Suite 200, Dayton, Ohio 45415
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Todd King appeals from his January 19, 2017 conviction and sentence to 180 days in jail for one count of aggravated menacing in violation of R.C. 2903.21(A). King's counsel filed a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that there is no issue with arguable merit to be raised in this appeal. By order filed June 1, 2017, we informed King that the *Anders* brief had been filed and advised him of his right to file his own brief and the time limit for doing so. In the interim, counsel requested permission to withdraw due to new employment during which he will no longer be in the private practice of law. We appointed substitute counsel to review the record including the *Anders* brief and to notify the court whether an amended or supplemental brief was appropriate. New counsel filed a response concurring with the existing *Anders* filing but pointed out an additional potential non-meritorious issue for this court to review. By order of August 18, 2017, we again notified King about the *Anders* brief and of new counsel's response and advised him of his right to file his own brief within 60 days. King has not filed a pro se brief, and the time for filing has expired.

## The Facts and Course of Proceedings

{¶ 2} Shortly after midnight on September 2, 2016 D.S. was walking home from the apartment of a friend, northbound on the west side of Gettysburg Avenue in Dayton, Ohio. At the intersection with Glenbrook Drive, a maroon "small s-ten" pickup truck with white bars on both sides of the bed, "like rails," stopped at the stop sign on eastbound Glenbrook at Gettysburg, blocking D.S.'s path to cross Glenbrook. The truck was occupied by a driver and a passenger, and after the passenger window was rolled down the driver made some indiscernible comment to D.S. D.S. walked around the back of the

truck to continue on his path. Once he was on the other side of the truck, the driver exited the truck, pointed a black handgun that "looked like, maybe a nine millimeter" in D.S.'s face, and asked "[are] you who I'm looking for?" D.S. was "shaking" and "nervous" "thinking I'm going to die right here in front of a funeral home" on the corner. The driver stared at D.S. for a while. D.S. later explained "that's how I was able to get a good look because I'm looking him eye-to-eye." There was a streetlight "right there." The driver then got back in the truck and turned right to travel south on Gettysburg and then made a left turn onto a side street.

{¶ 3} D.S. continued walking north on Gettysburg toward a well-lit service station where he hoped to call the police. When he got near the service station, he saw the truck pull in and park on the other side. D.S. obtained a number off the truck's thirty-day tag that he later described to police as "D1444102." D.S. continued walking to his nearby home and then called the police. D.S. reported the events to responding officers and described the driver as a black male 5'-5" to 5'-7" wearing a black tank top with red trim and a tan fisherman-style bucket hat.

{¶ 4} The two responding officers, in separate cars, began patrolling the area and located a maroon Chevrolet S-10 pickup truck with a "cage" on the bed occupied by two black males bearing a thirty-day tag "D144402," driving south on Gettysburg in the vicinity of Glenbrook. A traffic stop was initiated but the truck did not stop until it made several turns and entered the driveway of a residence. The occupants were ordered from the car at gunpoint. King, the driver, was wearing a black tank top with red trim and a tan bucket hat. As the officer was patting him down, before the police explained the reason for the stop or nature of the investigation, "with no questions asked, [he] told [the officer] he did

not point a gun at anyone." A black pellet gun was found under the driver's seat. The officer testified that the door to the truck remained open, and "it was visible from the door, doorway." The gun was introduced as an exhibit and displayed to the trial judge who commented that "they are making them more real all of the time." The court suggested that photos be made of the gun and included in the record "in lieu of the object," which was done with agreement of counsel.

{¶ 5} D.S. identified King in court as the man who pointed a gun at him. The arresting officer identified King as the driver of the truck with the gun on the front floorboard.

{¶ 6} The defense called the passenger, King's nephew, as a witness. He admitted they had been at the gas station to get cigarettes but denied that his uncle ever had a gun or that King ever got out of the truck to make any gestures at anyone. The defendant also testified. He admitted that he had driven the truck to the gas station but denied that he had pointed a gun at D.S. On direct examination, he also specifically denied "at any point" making any comment about not pointing a gun at anyone to the officer who arrested him. He said he did not pull over right away when the police were behind him with their lights on because he knew he didn't do anything. He just went on and drove to his mom's instead. On cross-examination, King admitted that he told the officer that he did not pull a gun on anyone but claimed the denial was only after the officer told him that King fit the description of someone who had pulled a gun.

{¶ 7} The trial court promptly found King guilty and ordered a presentence investigation. King subsequently was sentenced to 180 days in jail with credit for two days. No fine was imposed. Court costs of $111 were suspended, and the case was

marked, "Paid in full." No request for a stay of the sentence appears in the record. Counsel for the State represented in its brief that the sentence has been fully served, and substituted counsel for the appellant acknowledged that any sentencing issues are moot.

**Potential Assignments of Error**

{¶ 8} Original appellate counsel identified potential assignments of error addressing whether the verdict was against the manifest weight of the evidence and whether trial counsel was ineffective for failing to make a Crim. R. 29 motion for acquittal during the trial. Substituted appellate counsel suggests trial counsel could have been ineffective for failure to file a motion to suppress the gun that was located in the pickup truck. We agree with both counsel that such potential assignments would be frivolous.

{¶ 9} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Because the trier of fact sees and hears the witnesses at trial, we must defer

to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, at 175.

{¶ 10} Upon review of the trial transcript, we agree with appellate counsel that there is no arguable issue as to whether King's conviction is against the manifest weight of the evidence. The record supports the verdict of the trial court. King's denials notwithstanding, the chance that there were two maroon trucks with bars around the bed, occupied by two men, with the driver wearing clothing identical to the victim's description, with the described weapon on the floorboard, in the same vicinity, around the same time, is simply unbelievable. The victim's description of the events, the activity, and the surrounding circumstances could not have been described so accurately if the menacing with the gun had not occurred. Moreover, because witness credibility is the decision of the trier of fact, an argument that the verdict is against the weight of the evidence is frivolous.

{¶ 11} We also conclude that the failure to make a Crim. R. 29 motion at trial is an issue with no arguable merit. To establish ineffective assistance of counsel, an appellant must demonstrate "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id.* at 694.

{¶ 12} Here there is not a reasonable possibility that a Crim. R. 29 motion would have made any difference. Crim. R. 29(A) states that a court shall order an entry of judgment of acquittal "if the evidence is insufficient to sustain a conviction" for the charged offense. Moreover, "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Robinson*, 2d Dist. Montgomery No. 26441, 2015-Ohio-1167, ¶ 17. Because there is no arguable merit to a manifest weight challenge, there likewise is no arguable merit to a sufficiency challenge which, in turn, means that there is no reasonable possibility that a Crim. R. 29 motion would have been successful. On this record, the failure to make Crim. R. 29 motions cannot be prejudicial. In the absence of prejudice, an ineffective assistance of counsel argument is without merit.

{¶ 13} We agree with substituted counsel's suggestion that the failure to file a motion to suppress the admission of the gun found in the pickup does not present an ineffective assistance of counsel issue with arguable merit for at least two independent reasons. First, there should be no question that the circumstances described by the complaining witness constituted adequate justification for the stop of the pickup and for King's removal and detention. When he exited the vehicle, the driver's door remained open, and the gun was in plain view. The plain-view doctrine is an exception to the Fourth Amendment warrant requirement. "Under the plain-view exception, 'police may seize an article when its incriminating nature is immediately apparent to an officer who comes in contact with the item through lawful activity.' " *State v. Thompson*, 2d Dist. Montgomery

No. 25658, 2013-Ohio-4825, ¶ 13, quoting *State v. Pounds*, 2d Dist. Montgomery No. 21257, 2006-Ohio-3040, ¶ 19. (Citation omitted.) The only evidence in the record is that the gun was in plain view.

{¶ 14} Second, under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband, and exigent circumstances necessitate a search or seizure. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.E.2d 442 (1999). A vehicle's mobility is the traditional justification for this exception to the warrant requirement. *Mills* at 367; *Dyson* at 467. Officers stopped the truck within a short time after the aggravated menacing with what appeared to be a real firearm, and there was every reason to believe that the gun was in the vehicle. There is no reasonable possibility that a motion to suppress would have been successful in light of the automobile exception.

### *Anders* review

{¶ 15} We have conducted a thorough and complete examination of all the proceedings to decide whether this appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), citing *Anders* at 744. We have reviewed the docket, the various filings, the written transcript of the trial and sentencing hearings, the presentence investigation report, and the sentencing entry. We also note that King did not seek a stay of his sentence and that he now has completed his sentence. Therefore, an appeal of this misdemeanor conviction is most likely moot. *Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 17-23. From our review, we have found no non-frivolous issues for appeal. Accordingly, the judgment of

the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Troy B. Daniels
Joyce M. Deitering
Todd A. King
Hon. Deirdre E. Logan