[Cite as *State v. Woods*, 2012-Ohio-5509.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98054

---

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## CLYDE WOODS JR.

DEFENDANT-APPELLEE

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Common Pleas Court
Case No. CR-556141

**BEFORE:** S. Gallagher, J., Sweeney, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** November 29, 2012

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Maxwell M. Martin
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113


**ATTORNEY FOR APPELLEE**

Aaron T. Baker
Aaron T. Baker Co., L.P.A.
38109 Euclid Avenue
Willoughby, OH   44094

SEAN C. GALLAGHER, J.:

{¶1} Plaintiff-appellant, the state of Ohio, appeals from the trial court's decision to grant the motion to suppress of defendant-appellee, Clyde Woods, Jr. For the reasons set forth below, we affirm the ruling.

{¶2} On October 31, 2011, Cleveland patrol officers Donald Kopchak and Jeffrey Yasenchak worked the second shift. Because it was Halloween evening, the officers focused on children's safety in the area of East 105th Street. As they headed west on Adams Avenue, the officers were behind a black Lincoln MKZ that just turned onto Adams from East 105th Street. The speed limit on Adams is 25 m.p.h. The officers' speed was 35 m.p.h. They "paced" the Lincoln for a "little over two blocks" and concluded that the driver was exceeding the 25 m.p.h. speed limit.

{¶3} Yasenchak activated the overhead light and sirens and stopped the Lincoln by the address of 9601 Adams. Yasenchak approached the driver's side, and Kopchak approached the passenger's side. The driver, Woods, was the only person in the Lincoln.

{¶4} Woods stepped out of the car at Yasenchak's request. While Yasenchak patted down Woods, "some sort of large object is moving down [Woods's] pant leg all the way down to his boots." Yasenchak pulled up the bottom of Woods's pant leg and found one bag of suspected marijuana. The officers handcuffed Woods and arrested him

for using a motor vehicle to solicit drug sales, a violation of Cleveland Codified Ordinances 619.23. The officers then walked Woods back to the patrol car, advised him of his *Miranda* rights, and placed him in the back seat.

{¶5} Yasenchak testified at the motion to suppress hearing about why he patted down Woods after he asked him to step out of the Lincoln:

A. As soon as he rolled down the window, I just detected the scent of marijuana.

Q. And are you familiar with the scent of marijuana?

A. Yes.

Q. Burned and unburned?

A. Yes.

Q. And can you describe for the Court why you're familiar with that scent?

A. I made a lot of arrests. I was in the narcotics unit for two and a half years [out of 14 with the department] * * *. Just numerous arrests, and personal experience with marijuana.

Q. Are you trained to identify that scent?

A. Yes.

Q. Are you qualified to identify that scent?

A. Yes. I've attended seminars from ATF, FBI, DEA all pertaining to drug investigations.

{¶6} After Woods's arrest, Kopchak proceeded to inventory the Lincoln's contents in preparation of towing the car. He testified at the motion to suppress hearing about the inventory search:

A. [I]n the trunk was an Ohio State bag, bookbag, backpack, I believe, and inside that backpack was [sic] two large bags of marijuana.

Q. Okay. Now, backing up, had you — obviously, by the time that you're doing an inventory search of the car, you have located some marijuana on the person of Mr. Woods, correct?

A. Correct.

Q. Any other marijuana found in the passenger compartment of the car?

A. No, I don't believe so.

Q. Okay. Were you — did you detect the presence of any other marijuana?

A. When I was in the back seat, making sure there was no valuables in the back seat, the smell of unburned or fresh marijuana was still very strong in the vehicle.

Q. Okay. All right. So then you continue the inventory search and find the backpack, correct?

A. Correct.

Q. And did you have to open the backpack, it was already open, or what?

A. It was already open.

{¶7} Kopchak next testified about his training relevant to the feel and smell of different drugs, including burnt and unburnt marijuana. He followed up with testimony that he made "probably too many to count" marijuana arrests during his five years on the police force. The marijuana found in the trunk of Woods's Lincoln was unburnt

marijuana with a "strong odor," even in the three plastic bags inside each other making up State's Exhibit No. 3. The marijuana was in two individual large plastic freezer bags when found by Kopchak.

{¶8} Kopchak also testified about his training on the Cleveland Police Department's tow policy. He stated that he read the tow policy a few years ago and he receives updates during roll call. According to him, he was accurate, thorough, and acted in a manner consistent with the policy when he inventoried Woods's vehicle. In the tow supplement, Kopchak did not list anything of value recovered from the trunk or the passenger compartment. He also lifted the hood of the Lincoln as part of the inventory search, "[j]ust to make sure everything's there that's supposed to be there."

{¶9} During cross-examination, Kopchak admitted to issuing a citation for weaving to Woods ten days earlier, on or about October 21, 2011. Woods was briefly in police custody that day. When questioned as to why he was in custody, Kopchak responded, "[b]ecause he got out of his vehicle, exited his vehicle, and continued ignoring all my verbal commands to stop."

{¶10} On November 8, 2011, Woods was charged with drug trafficking in violation of R.C. 2925.03(A)(2), with forfeiture and schoolyard specifications; possessing criminal tools in violation of R.C. 2923.24(A), with forfeiture specifications; and drug possession in violation of R.C. 2925.11(A), with forfeiture specifications.

{¶11} On January 1, 2012, Woods filed a motion to suppress stop, arrest, and search. He asserted that the traffic stop and pat down were improper because he was not

driving in violation of the posted speed limit. His arrest was improper as well because the officers had no evidence or any indication that he was soliciting drug sales from his vehicle. Finally, the search of the vehicle was not a proper inventory search. Woods requested that the trial court, therefore, suppress all evidence obtained by the officers.

{¶12} The trial court held a motion to suppress hearing on January 26, 2012. The trial court granted the motion and suppressed as evidence all of the marijuana discovered on Woods's person and in the trunk of his vehicle. In its opinion dated March 1, 2012, the court stated:

> Since radar was not used by these officers to detect the speed of Defendant's vehicle, and because of the short distance traveled by Defendant's vehicle following his turn off East 105th Street, and because neither officer testified that they had specified training in detecting speed of another vehicle unaided by technology, it is unlikely that stopping Defendant's vehicle for traveling at 35 miles per hour in a 25-mile per hour zone is justified within the meanings articulated by *State v. Johnson* (1986) 34 Ohio App.3d 94 or *Brown v. Texas* (1979) 443 U.S. 47.
>
> Testimony of the officers that the search was an inventory search of the vehicle was tantamount to a tow is disingenuous and merely a pretext for the claimed inventory. First of all, the stop, handcuffing and pat down were illegal since probable cause was absent. Secondly, the search of the trunk and most [s]uspiciously, the hood, along with the officer's failure to list all of the vehicle's contents on the inventory list suggests that the search of the vehicle was neither incidental to a tow nor for the purposes of inventory.

{¶13} The state timely appealed and challenges in one assignment of error, the trial court's ruling on the motion to suppress. The state argues that the police officers properly stopped Woods based on pacing his vehicle under the authority of *Richmond Hts. v. Myles*, 8th Dist. No. 86171, 2006-Ohio-542. It also argues that a police officer

may properly order a motorist out of a vehicle when stopped for a traffic citation, even without suspicion of criminal activity, under the authority of *State v. Evans*, 67 Ohio St.3d 405, 1993-Ohio-186, 618 N.E.2d 162. According to the state, the smell of marijuana justified the pat down, the discovery of marijuana on Woods's person justified his arrest, and his arrest and detention justified the inventory search. For the following reasons, we reject the state's arguments.

{¶14} Appellate review of a suppression ruling involves mixed questions of law and fact. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. *See State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992); *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. *Burnside* at ¶ 8. The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. *Id*.

{¶15} When determining whether an investigative stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. An officer's inchoate hunch or suspicion will not justify an investigatory stop. For example, "[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately

rely in determining whether an investigative stop is warranted." *Bobo* at 179. However, that fact alone is insufficient. The totality of the facts and circumstances before the officer must reasonably suggest that some specific criminal activity is afoot. *Id*. Courts must give "due weight to the officer's trained eye and experience" in reviewing the totality of the circumstances. *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶16} Some appellate courts in Ohio, including ours, have held that an officer's visual estimation of a vehicle's speed alone is insufficient to support a conviction for speeding. *See, e.g., Middleburg Hts. v. Campbell*, 8th Dist. No. 87593, 2006-Ohio-6582, abrogated by *Barberton v. Jenney*, 126 Ohio St.3d 5, 9, 2010-Ohio-2420, 929 N.E.2d 1047. Prior to the Ohio Supreme Court's decision in *Jenney*, this court has recognized pacing as a legitimate means of determining speed. In *Middleburg Hts. v. Quinones*, 8th Dist. No. 88242, 2007-Ohio-3643, we stated:

> [A]n arresting officer's visual estimates of speed alone are insufficient to convict persons of speeding beyond a reasonable doubt. *See Cleveland v. Wilson*, 8th Dist. No. 87047, 2006-Ohio-1947, at ¶ 7. However, as Quinones himself points out, that was not the only evidence presented. Officer Bulka testified that he paced Quinones' vehicle to determine his speed. Many Ohio courts, including this district, have found that pacing a car is an acceptable manner for determining speed. *State v. Horn*, 7th Dist. No. 04BE31, 2005-Ohio-2930, at ¶ 18; *Middleburg Heights v. Campbell*, 8th Dist. No. 87593, 2006-Ohio-6582, at ¶ 17.

{¶17} The above recognition of pacing is based on a police officer's visual perception that a vehicle is speeding, in combination with years of experience. Visual perception and years of experience constitute "'specific and articulable facts which

provide the police officer with reasonable grounds to make an investigatory stop[.]'" *State v. Porter*, 11th Dist. No. 99-P-0061, 2000 Ohio App. LEXIS 4211, *10 (Sept. 15, 2000), quoting *State v. Lawless*, 11th Dist. No. 98-P-0048, 1999 Ohio App. LEXIS 2941 (June 25, 1999). *See State v. Hammen*, 5th Dist. No. 2012CA00009, 2012-Ohio-3628. The Seventh District relied on this language in recognizing pacing in *Horn*, and we, in *Quinones*, relied on *Horn* in recognizing pacing as a legitimate way of determining speed.

{¶18} The Ohio Supreme Court, however, in *Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, found that visual perception and general experience as a police officer is sufficient evidence to support an officer's unaided visual estimation of speed under certain circumstances. The court held:

> A police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed if the officer is trained, is certified by the Ohio Peace Officer Training Academy or a similar organization that develops and implements training programs to meet the needs of law-enforcement professionals and the communities they serve, and is experienced in visually estimating vehicle speed.

*Id.* at syllabus.

{¶19} In *Jenney*, the Supreme Court concluded that a police officer's visual estimation of the defendant's speed was sufficient to support a conviction under R.C. 4511.21(D) because there was testimony offered at trial as to the officer's training, certification, and experience in visually estimating vehicle speeds. *Id.* at ¶ 2. Specifically, the officer testified that he was trained to visually estimate vehicle speed, was certified by a law enforcement training organization in visual estimations, and

performed hundreds of visual speed estimations as a police officer. *Id*. at ¶ 21. The officer further testified that based on his training and experience, he estimated that the defendant's vehicle was traveling 70 m.p.h. in a 60 m.p.h. zone at the time of the traffic stop. *Id*. at ¶ 21-22.

**{¶20}** Accordingly, visual estimation of a vehicle's speed is sufficient evidence depending on the *type of training* provided to the police officer *and* the officer's *certification and experience in visually estimating vehicle speed.* In other words, visual estimation and the officer's general years of experience, without the training, certification, and actual experience in visually estimating vehicle speed, is insufficient evidence of a vehicle's speed.

**{¶21}** In this case, the totality of the officers' testimony was that Woods was exceeding the posted speed limit of 25 m.p.h. Yasenchak and Kopchak both testified about drug detection training and their respective years of service with the police department. Kopchak also testified about tow policy training. Neither officer testified, however, as to his training, certification, and experience in visually estimating vehicle speed. As a result, we find Yasenchak's and Kopchak's testimony as to their visual observation of Woods's speed insufficient under *Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047. *See also State v. Starks*, 196 Ohio App.3d 589, 2011-Ohio-2344, 964 N.E.2d 1058 (12th Dist.); *State v. Riddle*, 6th Dist. No. OT-10-040, 2011-Ohio-1547.

{¶22} The state argues that even if the officers' testimony did not satisfy the *Jenney* standard, the testimony about pacing Woods's vehicle alone warranted a traffic stop for speeding. The trial court considered and rejected this argument, finding the officers did not have sufficient time or distance to reasonably use pacing as a means to determine the speed of Woods's vehicle.

{¶23} Woods turned onto Adams from East 105th. This necessitated time and distance for the officers' vehicle to first catch up to Woods's vehicle and then commence pacing. The officers only followed Woods for two residential city blocks, too short a distance to establish a speeding violation based on pacing. The court was in the best position to evaluate the credibility of the officers' testimony on this point, and we decline to substitute our judgment for that of the trial court. *See Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972; *Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583. The trial court's findings are, therefore, supported by competent and credible evidence, and the totality of the facts and circumstances before the officers does not otherwise suggest criminal activity. *Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489.

{¶24} Under these circumstances, the trial court correctly concluded that the officers lacked probable cause to stop Woods for speeding. The ensuing searches of his person and vehicle were illegal, and thus the trial court properly suppressed the evidence discovered in those searches.

{¶25} Even if we found that the officers validly stopped Woods for speeding, the trial court serves as the trier of fact and is the primary judge of the credibility of the

witnesses. *Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972; *Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583. We would defer to and agree with the trial court's findings and conclusions relating to the testimony of Yasenchak and Kopchak: the "[t]estimony of the officers that the search was an inventory search of the vehicle was tantamount to a tow is disingenuous and merely a pretext for the claimed inventory," and "the search of the trunk and most [s]uspiciously, the hood, along with the officer's failure to list all of the vehicle's contents on the inventory list suggests that the search of the vehicle was neither incidental to a tow nor for the purposes of inventory." This is a classic example of a police officer's intentional use of an unlawful traffic stop, under a questionable codified ordinance, for the sole purpose of conducting a fishing expedition for evidence of another crime, and a tailored script at the motion to suppress hearing to justify the stop and subsequent searches. *See State v. Bevan*, 80 Ohio App.3d 126, 608 N.E.2d 1099 (11th Dist.1992).

**{¶26}** The state's assignment of error is accordingly overruled.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., and
KENNETH A. ROCCO, J., CONCUR