[Cite as *State v. Starks*, 2016-Ohio-5872.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | |
|---|---|
| STATE OF OHIO : | |
| : | Appellate Case No. 26932 |
| Plaintiff-Appellee : | |
| : | Trial Court Case No. 2014-TRC-8820 |
| v. : | |
| : | (Criminal Appeal from |
| AARON STARKS : | Dayton Municipal Court) |
| : | |
| Defendant-Appellant : | |
| : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2016.

. . . . . . . . . . .

BARBARA J. DOSECK, Atty. Reg. No. 0079159, and STEPHANIE L. COOK, Atty. Reg. No. 0067101, by EBONY N. WREH, Atty. Reg. No. 0080629, Dayton Municipal Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

BENJAMIN W. ELLIS, Atty. Reg. No. 0092449, 52 Marco Lane, Dayton, Ohio 45458
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Aaron Starks appeals from his conviction and sentence,

following a plea of no contest, for Speeding and Operating a Vehicle Under the Influence

of Alcohol. Starks contends that the trial court erred by denying his motion to suppress. In support, he argues that the arresting officer did not have a reasonable articulable suspicion justifying a traffic stop, and that the officer did not properly perform the field sobriety tests used to determine whether he was intoxicated.

{¶ 2} We conclude that there is sufficient evidence in the record to demonstrate that the traffic stop for speeding was justified based on the police officer's pacing of the suspect's automobile, using the officer's own speedometer to determine that the suspect was well above the speed limit. We further conclude the evidence demonstrates substantial compliance with the requirements for administering field sobriety tests.

{¶ 3} Accordingly, the judgment of the trial court is Affirmed.

## I. The Stop

{¶ 4} Just before midnight, in early July 2014, Ohio State Patrol Trooper Christopher Colbert was on routine patrol sitting stationary on Fourth Street in a marked cruiser in downtown Dayton. He saw a vehicle go through an intersection at a speed he visually estimated to be 60 miles per hour. Colbert pulled out to follow the vehicle. Before he could catch up, the vehicle entered the ramp for U.S. 35 East. Once Colbert got on to U.S. 35, he was again able to observe the vehicle. Colbert observed that the vehicle continued to pull away from his cruiser despite the fact that he was traveling about 100 miles per hour. Colbert observed the vehicle get caught up in some traffic, which caused it to slow to approximately 80 miles per hour. At that point, Colbert activated his cruiser lights, and pulled the vehicle over.

{¶ 5} Upon approaching the driver, Starks, Colbert noted that Starks had a very

strong odor of alcohol, that his eyes were bloodshot and glassy, and that his speech was slurred. Colbert asked him to exit the vehicle. Starks was unsteady on his feet and stumbled into Colbert as he exited the vehicle. He then leaned on Colbert, as he walked toward the cruiser. Colbert asked Starks to perform three field sobriety tests. The first test involved reciting the alphabet from the letter D through the letter Q. Colbert had to repeat the instructions for the test three times. Colbert noted that Starks omitted letters, and that his speech was slurred. The next test was the horizontal gaze nystagmus (HGN) test. Colbert observed six out of six possible clues, indicating a high probability of intoxication. The next test was the one-leg stand test, which Colbert terminated because Starks almost fell. After conducting the tests, Colbert arrested Starks for OVI. A breathalyzer test determined that Starks's blood alcohol level was .229.

## II. Course of the Proceedings

{¶ 6} Starks was charged with one count of OVI, in violation of R.C. 4511.19(A)(1)(a), and one count of Speeding, in violation of R.C. 4511.21. Starks pled not guilty, and moved to suppress evidence. A hearing was conducted in May of 2015, following which the motion to suppress was overruled. Thereafter, Starks pled no contest to, and was found guilty of, both charges. He was sentenced to three days in jail, and was ordered to pay fines and court costs. He was also required to attend a three-day driver intervention program. His license was suspended for a period of six months. He appeals. His sentence was stayed pending appeal.

**I.     There Is Sufficient Evidence in the Record to Warrant a Finding of**

**Substantial Compliance with National Highway Traffic Safety Administration Standards in the Field Sobriety Testing and a Finding of Sufficient Impairment to Justify an OVI Arrest**

{¶ 7} Starks' First Assignment of Error states as follows:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE ADMINISTRATION OF THE FIELD SOBRIETY TESTS WAS NOT SUBSTANTIALLY COMPLIANT.

{¶ 8} Starks argues that the field sobriety tests Trooper Colbert administered were not shown to have been conducted in substantial compliance with National Highway Traffic Safety Administration (NHTSA) standards. Consequently, he claims that the results of those tests are inadmissible, and that without those test results Trooper Colbert lacked probable cause to arrest Starks for OVI.

{¶ 9} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Treesh*, 90 Ohio St.3d 460, 472, 739 N.E.2d 749 (2001). Accordingly, reviewing courts must defer to the trial court's findings of fact if competent, credible evidence exists to support the findings. *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995). A reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Long* at 332, 713 N.E.2d 1.

{¶ 10} Starks was stopped for greatly exceeding the speed limit. We have held

that excessive speeding can be some evidence of impairment. *State v. Hido*, 2d Dist. Clark No. 10CA0046, 2011-Ohio-2560, ¶ 11. Upon addressing Starks, Colbert noted that he smelled of alcohol, had glassy bloodshot eyes, and was slurring his speech. When Starks exited the vehicle, he was unsteady on his feet, and actually stumbled into Colbert. These facts are sufficient to establish a reasonable suspicion of impairment justifying further detention for the purpose of conducting field sobriety tests.

{¶ 11} The legal requirement for the admission of field sobriety tests is whether they are conducted in substantial compliance with National Highway Traffic Safety Administration (NHTSA) standards. *State v. Tyner*, 2d Dist. Montgomery No. 25405, 2014-Ohio-2809, ¶ 7. Colbert testified as to his training, experience, and compliance with the applicable standards.

{¶ 12} With regard to the horizontal gaze nystagmus (HGN), Starks complains that Colbert did not inform Starks that he would be checking Starks's eyes, and did not check to determine whether Starks wears contact lenses. But the NHTSA manual does not require the person performing the test to do either of these things. Starks also notes that Colbert failed to tell him to follow the stimulus, in this case the Trooper's finger, until told to stop. But the evidence indicates that Starks was able to perform the test for the time required, and that Starks did not attempt to stop following prematurely. Thus, we find that even if the failure to so inform Starks constituted non-compliance, there is no evidence that it resulted in an invalid test result.

{¶ 13} Starks next complains that Colbert inserted an unnecessary instruction into the instructions for the one-leg stand. This test requires the suspect to stand with one foot approximately 6 inches off the ground, and to count for a specified amount of time. If

the suspect cannot keep that foot off the ground for the requisite time, an officer may view that as evidence of some impairment. During the test, Colbert instructed Starks that if his foot touched the ground, he should lift it back up and continue with the test. This is not a part of the instructions for the test, and it could lead a suspect to think that he can place his foot back on the ground without negative consequences. However, in this case Starks was initially unable to lift his foot, and he started to fall as soon as he did so. Colbert testified that he then terminated the test for Starks's safety. We conclude, therefore, that the instruction to which Starks objects had no bearing on the outcome of the test.

{¶ 14} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). In *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997), we observed: "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."

{¶ 15} We agree with the trial court that based upon the entirety of the evidence, the substantial-compliance requirement was met, and there was sufficient evidence of impairment to merit Starks's arrest for OVI.

{¶ 16} The First Assignment of Error is overruled.

## II.     The Officer's Observation of Excessive Speeding (60 Miles per Hour in a 35 mph Zone) Justified a Traffic Stop

{¶ 17} Starks' Second Assignment of Error states:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER DID NOT HAVE REASONABLE ARTICULABLE SUSPICIONS.

{¶ 18} Starks contends that Trooper Colbert had no basis for stopping him because the Trooper did not have sufficient time in which to pace his vehicle in order to determine that he was speeding.   In support, he cites *State v. Woods*, 8th Dist. Cuyahoga No. 98054, 2012-Ohio-5509, ¶ 23, for the proposition that an officer needs sufficient time or distance in order to estimate a vehicle's speed based upon pacing, and that two city blocks does not constitute either sufficient time or sufficient distance.   He further argues that an officer's visual estimation of speed is insufficient when the officer lacks training and certification in visual estimations.

{¶ 19} This court has upheld the use of pacing as a method of determining speed. *State v. Collins*, 2d Dist. Clark No. 2002 CA 51, 2002–Ohio–6858, ¶ 14. Other appellate districts have also upheld this method. *See, e.g.*, *City of Cleveland v. Bates*, 8th Dist. Cuyahoga No. 90212, 2008–Ohio–3679; *State v. Horn*, 7th Dist. Belmont No. 04 BE 31, 2005–Ohio–2930.

{¶ 20} In *Woods*, there was no evidence that the pacing officer was trained in visually estimating speed. *Id.* at ¶ 21.   Thus, the appellate court affirmed the trial court's finding that there was no basis for admitting a visual estimation of the defendant's speed.

*Id.* The appellate court further noted that it would not substitute its judgment for that of the trial court, which found that the officer did not travel far enough to pace the vehicle. *Id.* Unlike Starks, we do not read *Woods* as establishing a bright-line test for pacing. We conclude that under the facts of that particular case, the trial court concluded that the officer had neither the time, nor the distance, to establish the speed of the defendant's vehicle.

{¶ 21} Conversely, in this case, Colbert testified that he has training in speed detection, including visual estimation and pacing. He testified that, based upon his experience and training, when he first observed Starks on the downtown surface streets, he concluded that Starks was traveling close to 60 miles per hour, which prompted him to follow Starks's vehicle. Colbert testified that while on U.S. 35, he was traveling over 100 miles per hour, and that Starks continued to pull away from him. He testified that when Starks slowed due to encountering traffic, Colbert was traveling about 80 miles per hour.

{¶ 22} This is not a situation involving nominal speeding, as in *Woods* wherein the defendant was traveling 35 mph in a 25 mph zone, and the police were attempting to travel at the same pace as the defendant. *Id.* This case involves excessive speeding. We conclude that the pacing conducted in this situation, which required Colbert to accelerate to over 100 miles per hour before he was able to keep pace with Starks, was sufficient to establish that Starks was violating the established speed limit of 55 miles per hour. Had Colbert not testified that Starks continued to pull ahead of his cruiser until the cruiser reached a speed of over 100 miles per hour, we might not reach the same conclusion.

**{¶ 23}** We conclude that Colbert's observations were sufficient to establish probable cause that Starks was exceeding the speed limit, justifying a traffic stop. Accordingly, the Second Assignment of Error is overruled.

### III.     Conclusion

**{¶ 24}** Both of Starks's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., and FROELICH, J., concur.

Copies mailed to:

Barbara J. Doseck
Stephanie L. Cook
Ebony N. Wreh
Benjamin W. Ellis
Hon. Mia Wortham Spells
(successor to Judge John S. Pickrel)