[Cite as *State v. Hubbard*, 2021-Ohio-1740.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                           :
                                        :
    Plaintiff-Appellee            :    Appellate Case No. 28941
                                        :
v.                                      :    Trial Court Case No. 2020-CR-1246
                                        :
ARENZA DOUGLAS HUBBARD                   :    (Criminal Appeal from
                                        :    Common Pleas Court)
    Defendant-Appellant           :
                                        :

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of May, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 1160 East Dayton-Yellow Springs Road, Fairborn, Ohio 45324
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Arenza Douglas Hubbard appeals from his convictions for possession of a fentanyl-related compound, trafficking in fentanyl, trafficking in heroin, and possession of heroin. Hubbard filed a timely notice of appeal on October 20, 2020.

{¶ 2} The incident which formed the basis of the charges occurred around 11:30 p.m. on April 27, 2020, when Miami Township Police Sergeant Raymond Swallen was conducting routine road patrol on southbound I-75.   Swallen testified that he was driving a marked police cruiser and was wearing the uniform of the day.   Sergeant testified that he had been in law enforcement for approximately 15 years, and he had special training and experience with drug investigations.   Specifically, Swallen testified that he had been part of the Miami Valley Bulk Smuggling Task Force for five years, where he solely performed drug interdictions and drug investigations.

{¶ 3}   While watching traffic on southbound I-75, Sergeant Swallen observed a maroon Chevy Cruze with Michigan plates pass by him.   Swallen testified that he immediately noticed that the front windows of the vehicle were heavily tinted from top to bottom.   Swallen testified that because of the heavy tint, he could not see into the vehicle with his headlights shining forward.   Based upon his observation regarding the heavy tint, Swallen pulled onto southbound I-75 and began following the vehicle.

{¶ 4} While following the Chevy Cruze, Sergeant Swallen observed that the vehicle was traveling at a high rate of speed and moving faster than the other vehicles on the roadway.   Swallen testified that he was travelling at approximately 80 miles per hour and still had some difficultly catching up with the target vehicle.   Swallen testified that the posted speed limit on the section of the interstate that they were traveling was 65 miles per hour.

{¶ 5} Sergeant Swallen followed the vehicle for a short period of time in order to "pace" the vehicle. Swallen defined "pacing" as the process by which he matched the speed of a subject vehicle with the speed of his cruiser for a certain distance without closing the gap between the two vehicles. Swallen testified that he had received specific training in pacing vehicles when he was in the police academy. By pacing the subject vehicle for a short time, Swallen observed that the Cruze was traveling at a speed of 75 miles per hour for an extended period of time.

{¶ 6} After observing both the window tint violation and the speeding, which were citable offenses, Sergeant Swallen activated his overhead lights and initiated a traffic stop of the vehicle. The vehicle stopped on the right shoulder of the interstate, and Swallen exited his cruiser and approached the vehicle. Swallen testified that he could not discern how many people were inside the vehicle until he approached the front driver's side window, which had been rolled down. Swallen testified that there were three individuals in the vehicle; Hubbard was later identified as the individual sitting in the rear driver's-side seat in the vehicle. Swallen also testified that, upon approaching the open driver's-side window, he immediately detected the scent of raw and burnt marijuana. Swallen observed a green leafy substance on Hubbard's lap, on the front and back floorboards of the vehicle, and on the center console. Based upon his experience with drug interdictions and investigations, Swallen believed that there was additional contraband in the vehicle.

{¶ 7} After speaking with the driver and getting her information, Sergeant Swallen returned to his cruiser and requested another unit for assistance, as he was working by himself. Shortly thereafter, Miami Township Police Officer Cory Caldwell arrived at the

scene to assist with the traffic stop. After obtaining all of the passengers' information, Swallen ran it through the LEADS database in his cruiser's computer. Swallen testified that he ran the information through LEADS in both Ohio and Michigan because the vehicle's passengers were from Michigan, and sometimes different results could occur.

{¶ 8} Upon running the driver's information, Sergeant Swallen found that she had a protection order against her. Swallen then returned to the subject vehicle and asked the driver to exit the vehicle. The driver complied and informed Swallen that she had a carrying a concealed weapon ("CCW") permit and that there was a firearm in the vehicle. The driver also informed Swallen that there was marijuana inside the vehicle that they brought to Ohio from Michigan. Swallen testified that, under Ohio law, if the driver of a vehicle has a CCW permit, he or she is required to immediately inform the officer of that fact and of whether the individual has a firearm.

{¶ 9} Sergeant Swallen testified that he then ordered everyone out of the vehicle for the following reasons: 1) the driver indicated that there was a firearm in the vehicle but did not inform the officer where the gun was located; 2) the odor of raw and burnt marijuana emanating from the vehicle; 3) the observation of marijuana inside the vehicle; and 4) the driver's informing Swallen that there was marijuana inside the vehicle that had been transported from Michigan to Ohio. Swallen testified that he then patted Hubbard down for safety because he had been informed that there was a firearm in the vehicle, but he did not know where it was. During the pat down of Hubbard, Swallen located a pill bottle containing marijuana in his pocket. After searching the vehicle, including the trunk, the officers located a loaded firearm and illegal contraband. Hubbard was arrested and taken into custody.

{¶ 10} On May 7, 2020, Hubbard was indicted for the following offenses: Count I, possession of a fentanyl-related compound (≥20 grams but < 50 grams); Count II, one count of trafficking in fentanyl (≥20 grams but < 50 grams); Count III, trafficking in heroin (≥10 grams but < 50 grams); Count IV, possession of heroin (≥10 grams but < 50 grams); and Count V, possession of drugs (lorazepam). At his arraignment on May 13, 2020, Hubbard stood mute, and the trial court entered pleas of not guilty on his behalf.

{¶ 11} On May 27, 2020, Hubbard filed a three-branch motion to suppress: he argued that the initial stop was illegal, that the officers had no basis upon which to conduct a warrantless search of the vehicle, and that any statements made by Hubbard to the officers before he was *Mirandized* should be suppressed. A hearing was held on the motion to suppress on July 30, 2020. On September 9, 2020, the trial court overruled Hubbard's motion to suppress as it related to the legality of the initial stop and the warrantless search of the vehicle, but sustained his motion to suppress with respect to any statements he made to officers prior to being *Mirandized*.

{¶ 12} On September 9, 2020, Hubbard pled no contest to Counts I through IV in exchange for dismissal of Count V. At the sentencing hearing on September 23, 2020, the trial court merged Counts I through IV, and the State elected to proceed to sentencing on Count I, possession of a fentanyl-related compound, a felony of the first degree. The trial court found Hubbard guilty and sentenced him to a mandatory minimum term four years and a maximum term of six years in prison, ordered him to pay court costs, and waived the mandatory fine.

{¶ 13} It is from this judgment that Hubbard now appeals.

{¶ 14} Hubbard's first assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS.

{¶ 15} Hubbard contends that the trial court erred when it overruled the portions of his motion to suppress wherein he argued that Sergeant Swallen had not had a reasonable articulable suspicion to initiate a traffic stop and that the officers had no basis upon which to conduct a warrantless search of the vehicle.

{¶ 16} In regard to a motion to suppress, "the trial court assumes the role of trier of fac[t] and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E .2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*.

## Initial Traffic Stop

{¶ 17} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A traffic stop by a law-enforcement officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals

in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8.   The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 18} " 'Reasonable, articulable suspicion' is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Fears*, 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 5, citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Scott*, 2d Dist. Clark No. 2013-CA-104, 2014-Ohio-4963, ¶ 12.   Finally, any violation of traffic law provides the reasonable suspicion required to make an investigatory stop. *See Whren; State v. Wilhelm*, 81 Ohio St.3d 444, 692 N.E.2d 181 (1998); *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996) (holding that when a law enforcement officer has an articulable and reasonable suspicion or probable cause to stop a driver for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officers' subjective motivation for stopping the driver).

### Window Tint Violation

{¶ 19} Here, Hubbard argues that the trial court erred when it found that the traffic stop was proper because Sergeant Swallen observed a window tint violation.

Specifically, Hubbard claims that Swallen could not have seen the window tint because the subject vehicle was traveling at a high rate of speed past the officer. Hubbard also argues that there was insufficient evidence to find a reasonable articulable suspicion of a window tint violation, because there was no testimony that the window tint was tested by anyone in order to establish that the tint was in violation of Michigan and/or Ohio law.

{¶ 20} As previously stated, Sergeant Swallen testified that when he first observed the subject vehicle as it passed his position on southbound I-75, he had a reasonable suspicion that, based upon his 15 years of law enforcement experience, the vehicle's darkly tinted windows violated legal window tint limits.

{¶ 21} We have repeatedly held that a traffic stop for a suspected window-tint violation is lawful. *See, e.g., State v. Cole*, 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 16; *State v. Carson*, 2d Dist. Montgomery No. 26505, 2015-Ohio-4110, ¶ 26; *State v. Dudley*, 2d Dist. Montgomery No. 24904, 2012-Ohio-960, ¶ 8, citing *State v. Taylor*, 114 Ohio App.3d 416, 683 N.E.2d 367 (2d Dist.1996). The Ohio Supreme Court has also held that, whether pretextual or not, a traffic violation, including a tint violation, gives an officer a reasonable, articulable suspicion justifying a traffic stop. *See Mays* at ¶ 20. Ohio law requires that, where windows are tinted, 70% of light pass through a windshield and 50% of light pass through the front side windows. Ohio Adm. Code 4501-41-03(A)(2)-(A)(3); *State v. Davenport*, 2017-Ohio-688, 85 N.E.3d 443, ¶ 18 (2d Dist.).

{¶ 22} As previously stated, Sergeant Swallen testified that, upon initially observing the subject vehicle, he immediately noticed that the front windows of the vehicle were heavily tinted from top to bottom. Swallen testified that, because of the heavy tint, he could not see into the vehicle with his headlights shining forward; he could not discern

how many people were in the vehicle. In *Taylor*, we concluded that an officer's testimony that window tinting appeared "exceptionally dark" such that he could not see into the vehicle even with the police cruiser's headlights shining directly on the vehicle provided reasonable articulable suspicion to conduct a traffic stop. "We agree that this could have reasonably caused [the officer] to suspect that [the defendant]'s vehicle was unsafe and in violation of R.C. 4513.02. This supports the trial court's conclusion that the vehicle was lawfully stopped. Therefore, we find that the initial stop of [the defendant]'s car was reasonable, and did not violate his Fourth Amendment rights." *Id.* at 421.

{¶ 23} In light of the foregoing, we find that the trial court did not err when it concluded that Sergeant Swallen had had a reasonable articulable suspicion to stop the subject vehicle based upon his belief that he observed a window tint violation.

### Speeding Violation

{¶ 24} Hubbard also argues that Sergeant Swallen had no basis for stopping the vehicle for a speeding violation because the officer's training in "pacing" a vehicle occurred approximately 15 years earlier, when Swallen was in the police academy. In support of his argument, Hubbard cites *State v. Woods,* 8th Dist. Cuyahoga No. 98054, 2012-Ohio-5509, ¶ 21. Additionally, Hubbard argues that Swallen was not aware of any calibrations done to his cruiser's speedometer or calibrations to his onboard GPS system. Hubbard also argues that Swallen was unaware of how often his cruiser's speedometer was calibrated and did not take into account the curvature of the interstate in determining speed.

{¶ 25} This court has upheld the use of pacing as a method of determining speed. *See, e.g., State v. Starks*, 2d Dist. Montgomery No. 26932, 2016-Ohio-5872, ¶ 19; *State*

*v. Collins*, 2d Dist. Clark No. 2002-CA-51, 2002-Ohio-6858, ¶ 14.   Other appellate districts have also upheld this method. *See, e.g.*, *City of Cleveland v. Bates*, 8th Dist. Cuyahoga No. 90212, 2008-Ohio-3679; *State v. Horn*, 7th Dist. Belmont No. 04 BE 31, 2005-Ohio-2930.

{¶ 26} In *Woods*, there was no evidence that the pacing officer was trained in visually estimating speed. *Id.* at ¶ 21.   Thus, the appellate court affirmed the trial court's finding that there was no basis for admitting a visual estimation of the defendant's speed. *Id.*   The appellate court further noted that it would not substitute its judgment for that of the trial court, which found that the officer had not traveled far enough to pace the vehicle. *Id.*   In *Woods*, the trial court found that the officer had used neither sufficient time nor distance to establish the speed of the defendant's vehicle by pacing, and the appellate court agreed.

{¶ 27} Unlike the officer in *Woods*, however, Sergeant Swallen testified that he had received training in pacing when he was at the police academy, and the trial court found his testimony to be credible regarding his training and experience in that regard. Specifically, Swallen observed that the subject vehicle was traveling at a high rate of speed and moving faster than the other vehicles on the roadway.   Swallen testified that he was travelling at approximately 80 miles per hour and still had some difficultly catching up with the subject vehicle, in an area where the posted speed limit was 65 miles per hour.   Thereafter, Swallen followed the vehicle in order to pace it, and he observed that the vehicle was traveling at a speed of 75 miles per hour for an extended period of time in a 65 mile-per-hour zone.

{¶ 28} In order to determine the speed he was traveling and to pace the subject

vehicle, Sergeant Swallen observed the speed on his speedometer, which was a certified speedometer for a police interceptor cruiser. Swallen testified that his cruiser's speedometer was calibrated. Furthermore, Swallen testified that he was experienced in the use of the GPS system on his cruiser camera system, which also calculated the cruiser's speed and displayed it on the cruiser video. Swallen testified that the GPS system monitored the speed of the cruiser and calculated how fast the cruiser was moving based upon the time it took to travel a particular distance. Although Swallen testified that he did not personally calibrate the cruiser's in-camera GPS speedometer, he did observe the GPS's recorded speeds on a daily basis and stated that they were consistent with his cruiser's speedometer. Swallen testified that on the date that he initiated a stop of the subject vehicle, the GPS speedometer was consistent with his cruiser's speedometer. Furthermore, Swallen testified that, while he was pacing the subject vehicle, they were traveling on a straight section of the interstate and not on a curve.

{¶ 29} Additionally, we find that no expert testimony was necessary to establish that Sergeant Swallen's cruiser's speedometer and the GPS speedometer were properly calibrated and providing accurate readings. *See City of East Cleveland v. Ferrell*, 168 Ohio St. 298, 303, 154 N.E.2d 630 (1958). It is well established that "readings of a radar speed meter may be accepted in evidence, just as we accept photographs, X rays, electroencephalographs, *speedometer readings*, and the like, without the necessity of offering expert testimony as to the scientific principles underlying them." (Emphasis added.) *Id.*

{¶ 30} As previously stated, Sergeant Swallen was trained in pacing vehicles while he was in the police academy, and he had also received LIDAR training only a year prior

to this top, wherein he was trained to match speeds with the radar and the speedometers of the vehicles. Swallen testified that, since his original training in pacing, he had personally conducted "hundreds" of investigations and traffic stops involving pacing a subject vehicle in order to determine its speed. Therefore, we find that the trial court did not err when it concluded that Swallen had a reasonable articulable suspicion to stop the subject vehicle based upon his belief that he observed it speeding.

**Warrantless Search of the Vehicle**

{¶ 31} Under the automobile exception, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband and exigent circumstances necessitate a search or seizure. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A vehicle's mobility is the traditional exigency for this exception to the warrant requirement, and no other exigency is required. *Mills* at 367; *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); *California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). Probable cause exists when a reasonably prudent person would believe that a place to be searched contains evidence of a crime. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). We have held that probable cause is "not whether it is reasonable to believe items to be seized might be found in the place to be searched," but instead whether the evidence provides reasonable cause to believe the items would likely be found in the place to be searched.

*State v. Cole*, 2d Dist. Montgomery No. 23058, 2009-Ohio-6131, ¶ 23.

**{¶ 32}** Once an officer sees contraband in plain view inside a vehicle, he or she then has probable cause to believe the vehicle contains other items of contraband and may conduct a warrantless search of the vehicle pursuant to the automobile exception to the search warrant requirement. *State v. Thompson*, 2d Dist. Montgomery No. 25658, 2013-Ohio-4825, ¶ 13, citing *State v. Pounds*, 2d Dist. Montgomery No. 21257, 2006-Ohio-3040, ¶ 21. "Under the automobile exception, police may warrantlessly search a vehicle that they have probable cause to believe contains contraband." *Id.*, citing *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000). "The scope of the search extends to anywhere in the vehicle that contraband might be hidden." *Id.*, citing *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

**{¶ 33}** Hubbard relies upon *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 955, to argue that the search of his trunk was unlawful; in that case, the Ohio Supreme Court wrote that the trunk and the passenger compartment of an automobile were subject to different standards of probable cause to conduct searches. Hubbard's reliance upon *Farris* is misplaced because that case is factually distinguishable.

**{¶ 34}** In *Farris*, following a traffic stop, an officer detected a "light odor" of burnt marijuana coming from the vehicle's passenger compartment. The officer subsequently searched the vehicle's trunk, where drugs were discovered and seized. The Ohio Supreme Court held as follows:

> A trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches. In *State v. Murrell*, 94 Ohio St.3d 489, 764 N.E.2d 986 (2002), syllabus, this court held

that "[w]hen a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the *passenger compartment* of that automobile." (Emphasis added.) The court was conspicuous in limiting the search to the passenger compartment.

The odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle. *United States v. Nielsen*, 9 F.3d 1487 (C.A.10, 1993). No other factors justifying a search beyond the passenger compartment were present in this case. The officer detected only a light odor of marijuana, and the troopers found no other contraband within the passenger compartment. The troopers thus lacked probable cause to search the trunk of Farris's vehicle. Therefore, the automobile exception does not apply in this case.

*Id.* at ¶ 51-52.

{¶ 35} The Fourth Amendment limits searches to places where evidence of criminal activity is likely to be found. *State v. Griffith*, 2d Dist. Montgomery No. 24275, 2011-Ohio-4476, ¶ 21. *Farris* stands for the proposition that the odor of burnt marijuana in a vehicle's passenger compartment, standing alone, does not present a likelihood that the vehicle's trunk contains marijuana. In the instant case, Sergeant Swallen testified that, upon approaching the open driver's side window, he immediately detected the scent of raw and burnt marijuana. Swallen observed a green leafy substance on Hubbard's lap, on the front and back floorboards of the vehicle, and on the center console. Based

upon his experience with drug interdictions and investigations, Swallen believed that there was additional contraband in the vehicle.

{¶ 36} Additionally, the driver of the vehicle failed to immediately inform Sergeant Swallen that she possessed a CCW permit and that there was a loaded firearm in the subject vehicle. Only after Sergeant Swallen input her information into the LEADS system and returned to the vehicle did she inform him that she had a CCW permit and that there was a firearm in the vehicle. The loaded firearm was later found during a search of the vehicle on the floorboard of the front passenger seat.

{¶ 37} R.C. 2923.126(A) states in pertinent part:

* * * If a licensee is the driver or an occupant of a motor vehicle that is stopped as the result of a traffic stop or a stop for another law enforcement purpose and if the licensee is transporting or has a loaded handgun in the motor vehicle at that time, *the licensee shall promptly inform* any law enforcement officer who approaches the vehicle while stopped that the licensee has been issued a concealed handgun license and that the licensee currently possesses or has a loaded handgun * * *.

{¶ 38} We also note that once all of the passengers were removed from the vehicle and patted down, the driver was found to have $1,000 in cash on her person, the front seat passenger was found to have $1,000 cash on his person, and Hubbard was found to have marijuana in a pill bottle in his pocket. Based upon all of this information and evidence, Sergeant Swallen searched the trunk of the vehicle, where he found Hubbard's backpack containing additional contraband. "The police may search an automobile and the containers within it [without a warrant] where they have probable cause to believe

contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619, 634 (1991).

**{¶ 39}** Unlike in *Farris*, Sergeant Swallen did not rely on the odor of bunt marijuana emanating from the vehicle's passenger compartment, standing alone, to justify the search of the vehicle's trunk.   Rather, Swallen relied upon the following factors in addition to the smell of marijuana coming from the vehicle in order to justify his search of the trunk: 1) the presence of raw marijuana in Hubbard's lap, 2) the driver's failure to immediately inform him that she had a CCW permit *and* a loaded firearm in the vehicle, 3) the discovery of large amounts of money in the possession of the driver and front seat passenger; and 4) the driver informed Swallen that there was marijuana inside the vehicle that they had transported from Michigan to Ohio. *See, e.g., State v. Greenwood*, 2d Dist. Montgomery No. 19820, 2004-Ohio-2737, ¶ 11 (holding that an officer's observation of marijuana on a vehicle's passenger seat and floorboard provided probable cause to search the entire vehicle, including the trunk and its contents); *State v. Price*, 2013-Ohio-130, 986 N.E.2d 553, ¶ 19 (6th Dist.) (finding that other evidence, in addition to the odor of burnt marijuana, established probable cause to allow the officer to search the entire vehicle, including the trunk).   The trial court reasonably concluded that Swallen had probable cause to open the backpack found in the trunk of the vehicle as an officer conducting a warrantless search with probable cause may "search every part of the vehicle and its contents, including all movable containers and packages, that may logically conceal the object of the search." *State v. Welch*, 18 Ohio St.3d 88, 480 N.E.2d 384 (1995), syllabus.

**{¶ 40}** Hubbard's first assignment of error is overruled.

{¶ 41} Hubbard's second assignment of error is as follows:

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶ 42} In his second assignment, Hubbard argues that he received ineffective assistance of counsel when his trial attorney failed to specifically challenge the warrantless search of the trunk of the vehicle in a memorandum filed after the suppression hearing.

We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id*. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 605 N.E.2d 70 (1992).

*State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 43} A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *Strickland*. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim of ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 44} Here, Hubbard argues that his counsel was ineffective for failing to specifically challenge the warrantless search of the trunk of the subject vehicle in a memorandum filed after the motion to suppress hearing. Given our analysis with respect to Hubbard's first assignment regarding the propriety of Sergeant Swallen's warrantless search of the trunk of the subject vehicle, the decision of defense counsel *not* to challenge the search in a *post-hearing* memorandum may be viewed as a tactical decision which did not impact the outcome. No prejudice is established. Accordingly, we conclude that defense counsel's decision not to pursue this argument any further did not constitute ineffective assistance of counsel.

{¶ 45} Hubbard's second assignment of error is overruled.

{¶ 46} Both of Hubbard's assignments of error having been overruled, the

judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
David R. Miles
Hon. Dennis J. Adkins